IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


PAUL LEIGHTON,                                            Civ. No. 1:12-cv-01275-CL

               Plaintiff,

                                         **REPORT AND**

      v.                                            **RECOMMENDATION**

THREE RIVERS SCHOOL DISTRICT,

               Defendant.

_____

CLARKE, Magistrate Judge.

      Plaintiff Paul Leighton ("Plaintiff") brings this action against his employer, Defendant Three Rivers School District ("Defendant"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and Or. Rev. Stat. § 659A.046. Currently before the Court is Defendant's motion (#36) for summary judgment as to all of Plaintiff's claims. For the reasons set forth below, Defendant's motion (#36) should be GRANTED.

## PRELIMINARY EVIDENTIARY MATTERS

The evidence presented in support of, or in opposition to, a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56. To satisfy the requirement of authentication, a condition precedent to admissibility, the proponent must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

### I.    Defendant's Exhibits 1-26 and 28-51

Plaintiff moves to strike Defendant's Exhibits 1-26 and 28-51, all argumentation that relies on those exhibits, and the majority of Defendant's statement of facts. Pl.'s Resp., at 6. Plaintiff argues Defendant improperly attached the exhibits to the declaration of Defendant's counsel, who has no personal knowledge of whether they are true and correct copies of what he purports them to be. Thus, Plaintiff asserts neither the exhibits nor any statements based thereon are admissible. Defendant remedied this issue by refiling Exhibits 1-51 as attachments to the Declaration of Deborah Breckner ("Breckner"), Defendant's Director of Human Resources and Food Services. Because Breckner has personal knowledge of these documents and attests they are true and correct copies of documents maintained in Plaintiff's personnel file, Plaintiff's motion to strike should be denied as moot. The Court should consider the refiled exhibits attached to Breckner's declaration in ruling on Defendant motion for summary judgment.

### II.    Defendant's Exhibit 52

Plaintiffs have not moved against and Defendant has not resubmitted Exhibit 52 which Defendant's counsel's declaration describes as a "true and correct copy of the transcripts

excerpts from the deposition of [Plaintiff] which was taken on June 24, 2014 and July 16, 2014."

Stellwagen Decl. ¶ 53. In *Orr*, the Ninth Circuit addressed whether such statements were

sufficient to authenticate a deposition excerpt:

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. See FED. R. EVID. 901(b); FED. R. CIV. P. 56(e) & 30(f)(1). Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.' Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.

*Orr*, 285 F.3d at 774 (footnote and case citations omitted).

While Defendant's offering fails to meet this standard, Plaintiff independently offered a

properly authenticated copy of Plaintiff's deposition. The Court views Plaintiff's authentication

of the parties' mutual offering as sufficient evidence that the document is what the parties

purport it to be. *See id.* at 776 ("when a document has been authenticated by a party, the

requirement of authenticity is satisfied as to that document with regards to all parties, subject to

the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.").

Accordingly, the transcript pages proffered by Defendant should be deemed authenticated and

admitted.

## III.   Plaintiff's Exhibit 1

Plaintiff attached six exhibits to his declaration in opposition to Defendant's motion.

Leighton Decl. Ex. 1-6. Plaintiff's declaration makes no reference to Exhibit 1. The Court cannot

assess whether there is evidence sufficient to support a finding that Exhibit 1 is what Plaintiff

purports it to be, when Plaintiff has made no claim as to what Exhibit 1 is. *See id.* at 773-74.

Because it lacks foundation, the Court should not consider Plaintiff's Exhibit 1 in ruling on Defendant's summary judgment motion.

## FACTUAL BACKGROUND

On March 23, 1999, Defendant hired Plaintiff to work as Head Custodian I at Wolf Creek Elementary School. Breckner Decl. Ex. 1. In July 2004, Defendant promoted Plaintiff to work as the Head Custodian of Fleming Middle School. Breckner Decl. Ex. 2.

Over the years, Defendant documented multiple performance issues and school rule violations in Plaintiff's employment file. In February 2001 and again in May 2002, Defendant instructed Plaintiff to stop allowing his children to accompany him during work hours. Breckner Decl. Ex. 6, 13. In November 2001, Defendant reprimanded Plaintiff for eating with his daughter in the school's computer lab in violation of posted school rules. Breckner Decl. Ex. 7. In December 2001, Defendant notified Plaintiff that nine staff members indicated in a survey that they did not think the school was "clean and attractive." Brecker Decl. Ex. 8. In February 2002, co-workers complained Plaintiff was failing to keep the cafeteria and library adequately clean. Breckner Decl. Ex. 9-10. In July 2002, Plaintiff left school grounds for a break without locking any doors. Breckner Decl. Ex. 14. In March 2004, Plaintiff failed to notify Defendant that he would be absent from work. Breckner Decl. Ex. 15.

As far back as 2005, Defendant acknowledged Plaintiff needed to improve his relationship with other custodians. Breckner Decl. Ex. 3. In particular, Plaintiff had a very strained and well-documented relationship with one of his subordinates. Both submitted multiple complaints about one another to Defendant. Breckner Decl. Ex. 18-20; Leighton Decl. Ex. 3.

On April 2, 2010,[1] Defendant called Plaintiff into a meeting and reprimanded him for storing his personal motorcycle and equipment in a school storage area without prior approval. Leighton Decl. ¶ 12. Plaintiff asserts previous administrators approved of the arrangement and that another co-worker parked his motorcycle in the same location without recourse. Leighton Decl. ¶ 12. Defendant issued a formal written reprimand regarding the improper storage on April 19. Breckner Decl. Ex. 17. In it, Defendant noted this was the "third time in the past two school years where District policy has been ignored." Breckner Decl. Ex. 17. The other two instances involved Plaintiff's failure to inspect fire extinguishers as required and Plaintiff's son moving a large piece of Defendant's equipment. Breckner Decl. Ex. 17.

On February 3, 2011, Defendant gave Plaintiff two-day's unpaid suspension for inappropriate computer usage. Stellwagen Decl. Ex. 52, at 23 (Leighton Dep. 265:14-24). Plaintiff disputes the basis of this punishment, asserting that he was searching the Internet at a principal's request. Leighton Decl. Ex. 2. While en route on his motorcycle back to school after this disciplinary meeting, Plaintiff was rear-ended. Leighton Decl. Ex. 2, 5. Plaintiff went to the hospital and was treated for head, neck, and back pain. Leighton Decl. Ex. 5. Defendant asserts that before this accident it had intended to place Plaintiff on a Plan of Improvement. Breckner Decl. ¶ 6.

As a result of the accident, Plaintiff took leave from work until April 20, 2011, when he was released to work four hours per day of light duty custodial work. Breckner Decl. Ex. 23, 24. Defendant developed a temporary light duty position for Plaintiff in line with the physical restrictions set by Plaintiff's physician. Breckner Decl. Ex. 24.

---

[1] In his declaration, Plaintiff asserts this meeting occurred on April 2, 2011, after his motorcycle accident. Leighton Decl. ¶ 12. However, Defendant offers documentation, signed by Plaintiff, indicating it occurred in 2010. Breckner Decl. Ex. 17. Plaintiff also offers documentation indicating the event occurred in 2010. Leighton Decl. Ex. 3, at 4-5.

Before Plaintiff returned to work, one of Plaintiff's subordinates complained to Defendant that Plaintiff had visited the school and attempted to initiate and record a conversation with him. Breckner Decl. Ex. 26. On Plaintiff's first day back — April 20, 2011— Breckner met with Plaintiff and advised him that he was not permitted to record conversations with coworkers because such actions might fuel hostility. Breckner Decl. ¶ 3. Breckner also instructed Plaintiff to follow his work schedule by arriving no more than five minutes early and departing no more than five minutes late. Breckner Decl. Ex. 27. She advised Plaintiff that he was required to follow the same protocols as other parents when acting in that role at the school, told him to refrain from contacting the custodian he had attempted to record, and instructed him to abstain from discussing other employee's performance with any staff members other than a building administrator. Breckner Decl. Ex. 27. Breckner summarized their conversation in a memorandum to Plaintiff, dated April 25, 2011. Breckner Decl. Ex. 27.

Plaintiff wrote a memo responding to the April 20th meeting "to refute the constant flow of misinformation that inevitably leads to my being falsely portrayed as the bad guy or the one who causes trouble within the ranks of the custodial department." Breckner Decl. Ex. 29. He called the requirements that he arrive and depart campus five minutes before and after work hours and follow the same procedures as other parents when acting in that capacity on campus "discriminatory" because others are not held to the same requirements. Breckner Decl. Ex. 29. Plaintiff called Defendant's requirement that Plaintiff refrain from discussing another employee's performance with staff members other than the building administrator a violation of his First Amendment right to free speech and freedom of religion. Breckner Decl. Ex. 29.

In Plaintiff's May 2011 performance appraisal, Defendant noted Plaintiff's performance was generally "good" but that his initiative needed improvement and his ability to keep

information confidential was "unsatisfactory." Breckner Decl. Ex. 32. Defendant noted Plaintiff "will be placed on a Plan of Improvement to assist him in being successful in meeting expectations." Breckner Decl. Ex. 32. Defendant decided to hold Plaintiff's Plan of Improvement in abeyance until he was fully released from light duty. Breckner Decl. Ex. 27.

Also in May 2011, Plaintiff wrote a letter to Defendant asserting that he was being subjected to ongoing discrimination and harassment. Leighton Decl. Ex. 2. Among other things, he complained that Defendant allowed (1) other light duty employees to come and go as they pleased; (2) other employees to "circumvent [the] collective bargaining agreement and get the entire H.R. team on [Plaintiff's] back[;]" and (3) Plaintiff's co-worker to approach Plaintiff despite telling Plaintiff that he could not communicate with or record him. Leighton Decl. Ex. 2.

In September 2011, Plaintiff's physician determined Plaintiff was unable to work because of back pain persisting from his motorcycle accident. Breckner Decl. 34. Plaintiff went on medical leave for the remainder of the year. Breckner Decl. Ex. 34. Plaintiff underwent back surgery on January 6, 2012. Breckner Decl. Ex. 35.

Plaintiff's last full day of leave under the Family and Medical Leave Act ("FMLA") was set to run out on February 17, 2012. Breckner Decl. Ex. 53. Because Plaintiff had exhausted his statutory and contractual leave and had not been released to return to work, Breckner recommended Plaintiff's termination as unfit for duty. Breckner Decl. Ex. 53. Breckner scheduled a meeting to discuss his termination on February 27, 2012. Breckner Decl. ¶ 7. During the meeting, Plaintiff disclosed that an additional medical condition, a Type 2 brain injury, had been recognized during his worker's compensation appeal. Breckner Decl. Ex. 54. Plaintiff's representative argued Plaintiff's FMLA leave would not be exhausted if the other condition was found to be related to worker's compensation. Breckner Decl. Ex. 54. Defendant held its decision

regarding Plaintiff's termination in abeyance pending resolution of the matter. Breckner Decl. Ex. 54.

In May 2012, Plaintiff had multiple communications with Defendant about returning to work. Leighton Decl. ¶ 14. Plaintiff was under the impression that his doctor recommended he could work twenty hours a week as he built back his stamina. Leighton Decl. ¶ 14. Defendant disagrees and asserts that Plaintiff's status was unclear. On April 3, 2012, Defendant sent a letter to Plaintiff's treating physician, requesting information on his fitness for duty. Breckner Decl. Ex. 36. On May 8, 2012, Southern Oregon Orthopedics issued a note that Plaintiff "may return to regular work with no restrictions." Breckner Decl. Ex. 37. A date stamp on the note indicates the school district did not receive it until July 19, 2012. Breckner Decl. Ex. 37. On May 9, 2012, Plaintiff's treating physician completed a form in which he assessed Plaintiff could return to light duty, working 20 hours a week. Breckner Decl. Ex. 38. On May 22, 2012, Plaintiff's physician sent Defendant a letter stating Plaintiff had been unable to work since September 2011 due to back pain from his motor vehicle accident. Breckner Decl. Ex. 34. In August 2012, Plaintiff's worker' compensation counsel sent a letter to Plaintiff's physician acknowledging "some dispute over whether or not [Plaintiff] has been release[d] back to regular work without restrictions." Breckner Decl. Ex. 41. On September 13, 2012, an occupational therapist found Plaintiff could perform all the physical demands of his job with the exception of handling 100 pounds. Leighton Decl. Ex. 5. The therapist recommended that Plaintiff begin working four hours per day and gradually increase back up to full time. Leighton Decl. Ex. 5. On September 18, 2012, Plaintiff's treating physician recommended Plaintiff refrain from twisting and work four hours days for his first four weeks back at work. Breckner Decl. Ex. 44.

The parties dispute whether Defendant had the capacity to accommodate Plaintiffs' restrictions. Defendant asserts that it did not have a four-hour position available. Breckner Decl. Ex. 45. It believed the twisting limitation severely hindered Plaintiff's ability to complete most custodial tasks. Breckner Decl. Ex. 45. Therefore, Defendant concluded it could not reasonably accommodate Plaintiff's restrictions for the next four weeks. Breckner Decl. Ex. 45. Instead, Defendant committed to lay off a head custodian to free up a full-time position for Plaintiff when his doctor fully released him for work. Breckner Decl. Ex. 45. Plaintiff says Defendant allowed him to work a modified schedule twice before and nothing had change in Defendant's circumstances to limit its ability to do so again. Leighton Decl. ¶ 15. He says, "As of March, even on light duty, I should have been able to go back and do my job." Stellwagen Decl. Ex. 52, at 6 (Leighton Decl. Ex. 154:23-25). In or around October 2012, Plaintiff communicated with Defendant about securing a lift to assist with heavy lifting so that he could return to work. Leighton Decl. ¶ 16. Defendant did not move forward with the request. Leighton Decl. ¶ 16.

On December 13, 2012, Plaintiff's physician cleared Plaintiff to work full duty, 8 hours a day. Breckner Decl. Ex. 47. One week later, on December 19, 2012, Plaintiff was reinstated to full duty as Head Custodian at Fleming Middle School. Breckner Decl. Ex. 49. After reinstatement, Defendant began Plaintiff's Plan of Improvement required in Plaintiff's May 2011 performance evaluation Breckner Decl. Ex. 49. Defendant developed a program of assistance for Plaintiff to improve his relationships, communication, planning, scheduling, and judgment. Breckner Decl. Ex. 50. In October 2013, Defendant congratulated Plaintiff on his successful completion of the improvement plan. Breckner Decl. Ex. 51. The parties dispute whether the length of Plaintiff's plan of improvement was equivalent to or substantially more than those

imposed on other employees. Breckner Decl. Ex. ¶ 6. Stellwagen Decl. Ex. 52, at 24-25 (Leighton Dep. 266:21-267:1).

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. *Celotex Corp.*, 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by FED. R. CIV. P. 56, designate specific facts that show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the

nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff raises claims of discrimination under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and state law. Defendant moves for summary judgment on all three claims. The Court considers whether genuine issues of material fact remain as to each of Plaintiff's alleged bases for discrimination in turn.

### I.    The Americans with Disabilities Act

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show (1) he is a qualified individual with a disability, (2) he suffered an adverse employment action, and (3) there is a causal connection between the adverse action and disability. *See Nunes v. Wal–Mart Stores, Inc.,* 164 F.3d 1243, 1246 (9th Cir. 1999). Here, the parties do not dispute the first element. Accordingly, for the purposes of this motion, the Court will assume Plaintiff was disabled within the meaning of the ADA as a result of injuries sustained from his motorcycle accident in February 2011. Stellwagen Decl. Ex. 52, at 1-2 (Leighton Dep. 149:19-150-11). Instead, Defendant's motion challenges Plaintiff's showings under the second prong and, by extension, the third prong. Defendant asserts

it did not take adverse action against Plaintiff and thus that Plaintiff did not suffer any discrimination on the basis of his alleged disability.

For the purposes of a discrimination claim, an adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation, brackets, and ellipsis omitted).[2] Among those employment actions that may qualify as adverse are termination, demotion, suspension, removal of job responsibilities, imposition of more burdensome work activities, overtime, reduction in salary or benefits, and substantial interference with work facilities that are key to job performance. *See Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002) (plaintiff established a prima facie case of disparate treatment where the defendant subjected the plaintiff to adverse employment actions including discriminatory overtime and termination "that constituted a material change in the terms and conditions of [the plaintiff's] employment") (internal quotation omitted); *Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) (finding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment" and therefore qualifies as an adverse employment action); *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir.

---

[2] Title VII and the ADA share similarly worded provisions outlawing discriminatory adverse employment actions. *Compare* 42 U.S.C. § 2000e-2(a)(1) (Title VII's substantive provision which makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment") *with* 42 U.S.C. § 12112(a) (the ADA's substantive provision which forbids discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."). Accordingly, courts apply similar definitions of adverse action to the two. *See McKay v. Johanns*, 265 Fed. Appx. 267, 269 (5th Cir. 2008) (finding nothing in Title VII case law indicates that moving an employee to a smaller work station is an adverse action and concluding, by extension, a similar limitation applies in the ADA context).

2000) (no adverse employment action when the plaintiff was not demoted, not stripped of work responsibilities, not handed different or more burdensome work activities, not fired or suspended, not denied any raises, and not reduced in salary or any other benefit). Without more, an employer's failure to respond to an employee's grievance, a warning letter, or a denial of vacation preferences are not sufficient to show adverse action. *See Chuang*, 225 F.3d at 1126 (finding that the employer's failure to respond to grievances did not amount to an adverse employment action because "it did not materially affect the compensation, terms, conditions, or privileges of the [plaintiffs'] employment"); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (holding that giving plaintiff an unfavorable shift and denying vacation preference were not adverse employment actions where Plaintiff was allowed to trade with other employees); *Hoang v. Wells Fargo Bank, N.A.*, 724 F.Supp.2d 1094, 1104 (D. Or. 2010) (warning letter that did not implement any materially adverse change in the terms and conditions of the plaintiff's employment was not an adverse employment action).

Plaintiff's Complaint (#1) does not specifically state which of Defendant's actions he alleges amounted to discriminatory conduct. However, from Plaintiff's deposition and responsive briefing, the Court gleans that Plaintiff generally alleges Defendant discriminated against him on the basis of his disability by imposing unique work restrictions on Plaintiff alone, placing Plaintiff on an improvement plan of abnormally long duration, and failing to reasonably accommodate Plaintiff's disability.[3] Stellwagen Decl. Ex. 52, at 2-4 (Leighton Dep. 150:12-152:25); Pl.'s Resp., at 10-12

---

[3] In addition, Plaintiff asserts that "[t]he day before Plaintiff returned to work from his medical leave," Defendant reprimanded him for parking his motorcycle on school property even though other employees were allowed to do so Pl.'s Resp., at 8. However, as noted in footnote 1, this assertion is inaccurate. The record shows Plaintiff received this reprimand in April 2010, almost a year before his disabling injury.

First regarding work requirements, Plaintiff asserts Defendant treated him less favorably than similarly situated employees by imposing unique restrictions on his schedule and conduct. Namely, Plaintiff says Defendant required him to (1) spend no more than five minutes on campus before and after his work hours, (2) remain on campus during his lunch breach, (3) refrain from bringing family members on campus, (4) refrain from supervising children on campus, and (5) refrain from recording conversations with other employees. Stellwagen Decl. Ex. 52, at 2-4 (Leighton Dep. 150:12-152:6); Pl.'s Resp., at 9. Without more, these are not cognizable as adverse employment actions. Plaintiff does not submit evidence that any of the five alleged restrictions materially impacted his employment status or conditions. Because there is nothing to suggest these restrictions had any effect beyond merely annoying Plaintiff, they do not quality as adverse actions.

Since his disabling injury, the only disciplinary action Plaintiff alleges that Defendant has taken against him has been the imposition of an improvement plan. Stellwagen Decl. Ex. 52, at 24-25 (Leighton Dep. 266:2-267:19). It is worth noting that Plaintiff concedes Defendant raised the concerns address in his plan "to some extent" before his motorcycle accident. Stellwagen Decl. Ex. 52, at 27-28 (Leighton Dep. 274:5-275:20).

The Ninth Circuit has held that undeserved performance ratings, if proven, may constitute "adverse employment decisions" for Title VII retaliation claims. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). However, such precedent arises in the retaliation context and is thus distinguishable from the present case. "The concept of 'adverse employment action' is more broadly construed in the retaliation context than in the substantive discrimination context in a disparate treatment claim." *Grimmett v. Knife River Corp.-Nw.*, No. CV-10-241-HU, 2011 WL 841149, at *9 (D. Or. Mar. 8, 2011) (citing *Burlington N. & Santa Fe Rwy Co. v. White*, 546 U.S.

53, 60–63 (2006) (anti-retaliation provision of Title VII, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment and may include actions that might dissuade a reasonable employee from making or support a claim of discrimination)).

For discrimination claims, a negative performance evaluation or performance improvement plan is not an adverse action where it does not materially affect the terms or conditions of employment. *Kortan*, 217 F.3d at 1113 (finding a partially negative performance evaluation with no associated tangible injury did not qualify as an adverse employment action); *see also Grimmett*, 2011 WL 841149, at *10 (finding a written warning that had no material impact on the employee's working conditions was not an adverse action). Here, Plaintiff asserts his performance plan lasted for an abnormally long time. However, he presents no evidence to show that the plan's duration, requirements, or administration affected the compensation, terms, conditions, or privileges of his employment in any tangible way. Accordingly, he has failed to show the plan amounted to an adverse action.

Finally, Plaintiff argues Defendant discriminated against him by failing to reasonably accommodate his disability. The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual." *Willis v. Pacific Maritime Ass'n*, 236 F.3d 1160, 1164 (9th Cir. 2001). Plaintiff asserts that he should have been permitted to work in a "light duty" capacity on a part-time basis beginning in October 2012. Pl.'s Resp. at 11-12. Modified schedules and re-assignments to vacant positions are acceptable reasonable accommodations. 42 U.S.C. § 12111(9). However, an employer is not obligated to create a new position to accommodate a disabled employee or remove another employee to free up a position

the disabled person desires. *Wellington v. Lyon County School District*, 187 F.3d 1150, 1155 (9th Cir. 1999) ("[T]he ADA does not impose a duty to create a new position to accommodate a disabled employee"); *Treanor v. MCI Telecomm's Corp.*, 200 F.3d 570, 575 (8th Cir. 2000) ("[T]he ADA does not require an employer to create a new part-time position where none previously existed."). Defendant represents to the Court that no part-time positions were available to accommodate Plaintiff's need for a gradual return to full-time work. Breckner Decl. Ex. 45. Plaintiff presents no evidence to show a part-time position existed or would have been a reasonable accommodation given Defendant's structure and needs. In short, Plaintiff has failed to satisfy his burden of establishing the reasonableness of his requested accommodation.

Plaintiff also argues Defendant violated its obligation to interact with Plaintiff regarding devices to help him lift heavy objects in line with his medical restrictions. Pl.'s Resp., at 11-12. Once an employer becomes aware of an employee's need for an accommodation, it has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement reasonable accommodations. *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). The record before the Court is sparse on this issue. Plaintiff testifies that he and Defendant discussed the possibility of acquiring a lift. Leighton Decl. ¶ 16 ("I was involved in communications with Defendant requesting whether I could get the lift and return to work."). It is unclear why Plaintiff does not believe this dialogue amounted to an interactive process. Moreover, the record indicates that, when considered alone, the requested lift was not a reasonable accommodation. Plaintiff had other restrictions, including his need for a reduced schedule and inability to twist, that prevented him from working in his former capacity regardless of the availability of a lifting device. Breckner Decl. Ex. 45. Thus on the issue of accommodations, there is no evidence that Defendant failed to engage in an interactive process

with Plaintiff. Nor is there any evidence that Defendant failed to implement a reasonable accommodation.

In sum, the record shows Defendant placed certain restrictions on Plaintiff's work schedule, required Plaintiff to complete a performance improvement plan, and declined to put Plaintiff back to work before his medical restrictions were lifted. However, Plaintiff has failed to establish that any of these acts or omissions materially impacted Plaintiff's compensation or the terms, conditions, and privileges of his employment. Accordingly, Plaintiff has not established an essential element of his ADA discrimination — the existence of an adverse employment action — and summary judgment is appropriate.

## II.    Title VII of the Civil Rights Act of 1964

Title VII makes it unlawful for an employer to discriminate on the basis "of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532 (2013). Plaintiff's Complaint (#1) alleges Defendant unlawfully retaliated against him; thus, invoking the last two criteria. *Id.* In addition, the Complaint generally asserts Defendant subjected Plaintiff to a continuing violation of his civil rights. In discovery, Plaintiff clarified that he is alleging Defendant discriminated against him because of his religion: Christianity.

Defendant moves for summary judgment against Plaintiff's Title VII claim in its entirety. Plaintiff submits no opposition. *See* FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion"); *see also Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013) (when an opposing party

fails to respond to a motion for summary judgment, the court can consider the fact asserted in the motion undisputed for purposes of ruling on the motion but the Court cannot grant the motion by default).

In order to set forth a prima facie case for religious discrimination, an employee must demonstrate that (1) he belongs to a protected class, (2) his work performance met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the employer treated other employees with similar qualifications more favorably. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). In his deposition, Plaintiff testified that Defendant treated him differently because of his religion on two occasions: first, when it prohibited him from streaming music on his work computer and, second, when it told him not to keep his Bible on his desk. Stellwagen Decl. Ex. 52, at 14 (Leighton Dep. 225:3-14). Plaintiff asserts Defendant's streaming prohibition was religiously motivated because Plaintiff routinely streamed a Christian radio station. Stellwagen Decl. Ex. 52, at 17 (Leighton Dep. 228:3-13). However, Plaintiff concedes that Defendant barred him from streaming music in general without mentioning the Christian station specifically. Stellwagen Decl. Ex. 52, at 17 (Leighton Dep. 228:2-13).

These alleged events do not rise to the level of adverse employment actions. *Davis*, 520 F.3d at 1089 ("[A]n adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." (citations and internal quotation marks omitted)). Plaintiff presents no evidence that his inability to stream music or keep his Bible on his desk materially disrupted any aspect of his employment. At most, the rules appear to have minimally inconvenienced Plaintiff and restricted the circumstances of his workspace. Such immaterial effects do not qualify as adverse actions. *See Michael v. Caterpiller Financial*

*Services Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) ("[a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (quoting *Ford v. General Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)).

Plaintiff's retaliation claim is also deficient. To establish Title VII retaliation, an employee must show he engaged in a protected activity, his employer took adverse action against him, and there is a causal link between the protected activity and the adverse action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003). Activities protected from retaliation include participation in any investigation, proceeding, or hearing under Title VII or opposition to a practice made unlawful by Title VII. 42 U.S.C. § 2000e-3. Here, there is no evidence that Plaintiff engaged in a protected activity. Thus, Plaintiff has not established that he took any action that Defendant could have unlawfully retaliated against, much less that Defendant actually did so. In the absence of any issue of fact on this claim, summary judgment is appropriate.

### III.    Or. Rev. Stat. § 659A.046

Plaintiff's Complaint (#1) alleges Defendant violated Or. Rev. Stat. § 659A.046 by failing to "return him to his original position upon release from his doctor to return to the position." In order to state a prima facie case under Or. Rev. Stat. § 659A.046, an employee must show (1) he suffered a compensable on-the-job injury, (2) he was disabled from performing the duties of her former position, (3) he made a timely demand for reemployment, (4) at the time of that demand a suitable position was available, and (5) the employer failed to reemploy the employee in the available suitable position. Or. Rev. Stat. § 659A.046; *see also Davis v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 3:12-CV-0808-SI, 2014 WL 4425815, at *17 (D. Or. Sept. 8, 2014). Here, Plaintiff offers no evidence that there were any suitable positions available

for his reemployment. There is nothing on the record before the Court to suggest that Defendant had any vacant positions for which Plaintiff was qualified given his medical restrictions. *See* Or. Admin. R. 839-006-0135(3) (a position is "suitable" if the employee has the necessary skills and abilities to perform it while complying with his medical restrictions); *see also* Or. Admin. R. 839-006-0135(2) (a position is "available" if it is vacant and the employee meets applicable restrictions). Because Plaintiff failed to provide any evidence from which a reasonable juror could infer that Defendant had suitable positions available for his reemployment, Defendant's motion should be granted with respect to Plaintiff's claim under Or. Rev. Stat. § 659A.046.

The Court notes that by alleging Defendant failed to "return him to his original position upon release from his doctor," Plaintiff appears to invoke the right to reinstatement, not the right to reemployment. Or. Rev. Stat. § 659A.043 addresses the reinstatement of injured workers. It requires that "a worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position." Or. Rev. Stat. § 659A.043(1). In December 2012, Plaintiff's physician released him to work without restriction and soon thereafter Defendant reinstated Plaintiff to his original custodial position. Plaintiff now asserts Defendant should have reinstated him in October 2012. Pl.'s Resp., at 14. However, the record shows Plaintiff was not capable of working full-time or performing the job's full range of physical tasks at that time. Plaintiff did not have a right to reinstatement when he was disabled from performing the duties of his former position. Or. Admin. R. 839–006–0130(1)(c); *see also Manesh v. Tokyo Electron Am.*, No. 06-233 KI, 2007 WL 539474, at *3 (D. Or. Feb. 13, 2007) (granting summary judgment in favor of the defendant on the plaintiff's reinstatement claim where the plaintiff was

not physically capable of performing his prior position without restriction). Accordingly, regardless of whether Plaintiff's third claim for relief is read as a claim for reemployment, reinstatement, or both, the Court should grant summary judgment in Defendant's favor.

## RECOMMENDATION

Based on the foregoing, the Court should GRANT Defendant's motion for summary judgment (#36).

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this ___15___ day of December 2014.

_____
MARK D. CLARKE
United States Magistrate Judge